IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff-Respondent*,

v().

TIMOTHY D. LUKER,

    *Defendant-Petitioner.*

Case No. 24-CR-10027-EFM
Case No. 25-CV-01082-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendant-Petitioner Timothy D. Luker's pro se Motion for Reconsideration (Doc. 33) of the Court's Order denying his Motion to Vacate under 28 U.S.C. § 2255. The Court's Order initially denied his Motion to Vacate (Doc. 22) as waived by the contents of his plea agreement, which both Defendant and the Government state is not the case. After reviewing the plea agreement, the Court agrees that Defendant did not waive his ability to bring his Motion to Vacate and grants Defendant's Motion for Reconsideration. For the reasons stated below, the Court now denies Defendant's Motion to Vacate on the merits.

## I.    Factual and Procedural Background

On March 12, 2024, Defendant was charged by grand jury indictment with one count of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2). At all relevant times, Defendant was represented by counsel. Defendant pled guilty to the charge against him on July 12, 2024.

As part of the factual basis for the plea agreement, Defendant agreed that he used his online Discord account to distribute six child pornography images to others while he was staying at a

halfway house within the District of Kansas after being previously convicted in the Eastern District of Missouri for possession of child pornography.[1] The plea agreement states, among other items, that Defendant agreed to pay at least $3,000 in restitution to each victim and acknowledged that the Court could impose a $5,000 assessment fee under the Justice for Victims Trafficking Act ("JVTA") and an additional assessment up to $35,000 under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA").

The Presentence Report ("PSR") filed in this case placed Defendant at a base offense level 22 with an upward adjustment to level 34 based on specific offense characteristic enhancements under USSG §§ 2G2.2(b)(2)–(6). It also placed his criminal history at category II based on his prior federal conviction for possession of child pornography. The PSR further included a Victim Impact Statement from the victim depicted in the images Defendant distributed. Defendant's counsel submitted a Sentencing Memorandum prior to the sentencing hearing. At Defendant's October 7, 2024, sentencing hearing, Defendant stated he had the opportunity to review the PSR and discuss it with his attorney. Neither the Government's nor Defendant's attorney objected to the PSR.

The Court sentenced Defendant to 210 months of imprisonment followed by a 20-year period of supervised release. The Court waived a JVTA assessment due to Defendant's indigency. The Court ordered Defendant to pay a $100 special assessment to the Crimes Victims Fund, a $10,000 AVAA assessment, and restitution of $5,000 to the victim depicted in images Defendant distributed. The Court further ordered Defendant to register as a sex offender upon his release

---

[1] Defendant's case before the Court is for the criminal prosecution of his actions in distributing child pornography. These actions occurred while he was on supervised release from his conviction in the Eastern District of Missouri. He is not before this Court on revocation of that term of supervised release.

under the Sex Offender Registration and Notification Act ("SORNA"). Neither the Government's nor Defendant's attorney objected to the Court's sentence.

Defendant subsequently brought a Motion to Vacate his sentence under 28 U.S.C. § 2255. There, Defendant asserts his counsel was ineffective by failing to make various objections at the sentencing hearing. The Court previously concluded Defendant waived his ability to bring this Motion as part of his plea agreement. Defendant now moves the Court to reconsider. The Government agrees reconsideration is warranted, but requests the Court deny Defendant's Motion to Vacate on the merits.

## II.     Legal Standards

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[2] The

---

[2] 28 U.S.C. § 2255(b).

petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[3] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[4]

Because Defendant proceeds pro se, the Court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers."[5] A pro se litigant is entitled to a liberal construction of his pleadings.[6] But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[7]

### III.   Analysis

**A.   Motion for Reconsideration**

In its previous Order denying Defendant's Motion to Vacate, the Court concluded that Defendant waived his ability to collaterally attack his sentence in Paragraph 12 of his plea agreement and failed to establish the "plea validity exception" set forth in *United States v. Cockerham*.[8] The Court, however, neglected the last sentence in Paragraph 12 which states "[n]otwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial

---

[3] *See Hatch v. Oklahoma.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by*, *Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[4] *See id*. at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[6] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] 237 F.3d 1179 (10th Cir. 2001).

misconduct."[9] Although Defendant essentially challenges his agreed upon sentence, he does so by arguing his counsel was ineffective for failing to raise the arguments presented in his Motion to Vacate. Accordingly, Defendant's challenge falls outside the waiver's scope.[10]

Courts should grant a motion for reconsideration where the court has misapprehended the facts, the parties' positions, or the controlling law.[11] Because the Court misapprehended the scope of the waiver in Defendant's plea agreement, the Court grants his Motion for Reconsideration and proceeds to the merits of his Motion to Vacate.

**B.      Motion to Vacate**

Defendant moves to vacate his sentence on the basis that his counsel rendered ineffective assistance for failing to raise various arguments. To succeed on an ineffective assistance of counsel claim, Defendant must meet the two-prong test set forth in *Strickland v. Washington*.[12] Under *Strickland*, Defendant must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced Defendant because it deprived him of the right to a fair trial.[13] Defendant must prove both prongs to prevail; the failure to prove one of the *Strickland* prongs is dispositive against the party claiming ineffective assistance of counsel.[14]

---

[9] Doc. 16 at 6.

[10] *See, e.g.*, *United States v. Garcia-Viveros*, 2017 WL 1208014, at *2 (D. Kan. Mar. 30, 2017) (stating that the other courts in this district "did not enforce the waivers against the defendants' ineffective assistance of counsel claims, even though their claims essentially challenged their agreed upon sentences"); *United States v. Almazan*, 2019 WL 4537194, at *3 (D. Kan. Sept. 19, 2019).

[11] *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (citation omitted).

[12] 466 U.S. 668 (1984).

[13] *Id.* at 687–89.

[14] *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006) (citations omitted).

The first prong requires Defendant demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[15] As such, "counsel's failure to raise or recognize a potential legal argument does not automatically render counsel's performance constitutionally deficient."[16] "In particular, if an argument is meritless, it is likely that the failure to raise it was not deficient performance."[17]

The second prong requires Defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18] In cases where a defendant pleads guilty, as Defendant has done so here, the Supreme Court has held that prejudice can only be shown if there is "a reasonable probability that, but for counsel's errors, [Defendant] would not have pleaded guilty and would have insisted on going to trial."[19] "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[20] Further, failure to raise a meritless argument "establishes that the defendant was not prejudiced by the failure to argue the point."[21]

Here, Defendant asserts his counsel provided ineffective assistance by failing to raise arguments against what he considers are unconstitutional and illegal exercises of jurisdiction, laws, and sentences. Defendant, however, never asserts that he would not have pled guilty or otherwise

---

[15] *Strickland*, 466 U.S. at 690.

[16] *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) (alterations and quotation omitted).

[17] *Id.*

[18] *Strickland*, 466 U.S. at 694.

[19] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[20] *Strickland*, 466 U.S. at 690.

[21] *Babcock*, 40 F.4th at 1177 (citation omitted).

insist on going to trial but for his counsel's errors, failing to demonstrate prejudice.[22] In any event, as explained below, Defendant's counsel did not err. "Because the merit of the ineffectiveness claim depends on the merits of the arguments not made by trial counsel,"[23] the Court addresses whether Defendant's arguments have merit in turn.

    1.    *Subject Matter Jurisdiction*

Defendant first asserts his counsel was ineffective for failing to challenge the Court's subject matter jurisdiction over his case. Specifically, Defendant asserts that his use of the internet, via Discord, to distribute six child pornography images does not satisfy the interstate commerce requirement to establish the Court's subject matter jurisdiction over his charge under 18 U.S.C. § 2252A(a)(2)(A) absent proof that his actions crossed state lines.

Section § 2252A(a)(2)(A) contains multiple jurisdictional hooks that the Government can rely on to establish a federal court's subject matter jurisdiction over a defendant. It requires the Government to prove a defendant knowingly distributed "any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."[24]

Here, the Government invoked the jurisdictional hook that Defendant used "any means or facility of interstate commerce" in Count 1 of the indictment—which Defendant pled guilty to—based on Defendant's use of the internet, via Discord, to distribute child pornography. It is well settled in the Tenth Circuit that "the Internet is generally an instrumentality of interstate

---

[22] *Almazan*, 2019 WL 4537194, at *4 (citation omitted).

[23] *Id.*

[24] 18 U.S.C. § 2252A(a)(2)(A).

commerce."[25] The Tenth Circuit has also held that the use of the internet in the transmission of child pornography satisfies the interstate commerce element, even in the absence of proof that the images themselves crossed state lines.[26] Accordingly, Defendant's use of the internet to distribute child pornography satisfies the interstate commerce element of his charge such that the Court had subject matter jurisdiction over his case.

Because Defendant's argument that the Court lacked subject matter jurisdiction is meritless, his counsel was not constitutionally deficient in failing to raise this argument nor was Defendant prejudiced as a result. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

### 2.     *Constitutionality of 18 U.S.C. § 2252A*

Next, Defendant asserts his counsel was ineffective for failing to argue that 18 U.S.C. § 2252A is unconstitutional "as applied to non-commercial viewing/possession not connected to the actual harm showed in the video."[27] Defendant argues that there is no intrinsic connection between the viewer of child pornography and the harm suffered by the victim when an offense, such as his, does not involve payment for images freely available on the internet or direct contact with the victim.

---

[25] *E.g.*, *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008).

[26] *See United States v. Baum*, 542 F. App'x 724, 726–27 (10th Cir. 2013) (interpreting § 2252A(a)(5)(B)—which contains the same jurisdictional hook as § 2252A(a)(2)(A) that a defendant used "any means or facility of interstate or foreign commerce"—to conclude there is "no need to establish that the images themselves had crossed state lines").

[27] Doc. 22 at 1.

Defendant's argument is contrary to Congressional findings on the distinct harm that flows from possessing and viewing child pornography.[28] Each time a child pornography image is viewed, additional harm is inflicted onto the victim, whether the viewer paid for the images or not.[29] The Supreme Court has upheld criminalizing mere possession of child pornography because it incentivizes possessors to destroy the materials, which in turn lessens the continuing harm to the child and prevents possible future harm to other children.[30]

Putting the harms from possession aside, Defendant did not plead to merely possessing six child pornography images; he pled to distributing those images. Because child pornography is "a permanent record" of the child's abuse, the Supreme Court has repeatedly recognized that "the harm to the child is exacerbated by [its] circulation."[31] The Supreme Court has also recognized that "[o]ne could certainly 'distribute' child pornography without expecting payment in return," and that distribution "in many cases, is carried out by individual amateurs who seek no financial reward," all in violation of § 2252A.[32] In distributing the six child pornography images, Defendant

---

[28] *See* Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(3), 122 Stat. 4001, 4001 ("Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed."); Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121(1)(2)–(4), 110 Stat. 3009, 3009-26.

[29] *See id.*; Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 501(2)(D), 120 Stat. 587, 624 ("*Every instance* of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." (emphasis added)).

[30] *See Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The State's ban on possession and viewing encourages the possessors of [child pornography] to destroy them . . . . [E]ncouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.").

[31] *E.g.*, *Paroline v. United States*, 572 U.S. 434, 440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)).

[32] *See United States v. Williams*, 553 U.S. 285, 294–95 (2008) (citation omitted) (interpreting 18 U.S.C. § 2252A(a)(3)).

exacerbated the victim's harm by circulating the photos for others to view.[33] This harm is evidenced by the Victim Impact Statement submitted to the Court:

> To this day and for the rest of my life, I am and will continue to feel haunted, torn apart, emotionally, and scarred. I am continually aware that my privacy has been and is being invaded, daily, and by people I do not know and who do not know me . . . . [T]he abuse didn't end when my father was arrested. It continues, every day, only now I am experiencing my abuse by nameless, faceless people who find gratification in the images of my abuse. As a result, I am left feeling disgusted . . . . For me what happened doesn't end; it continues . . . . Knowing that there are others, unknown to me, but nevertheless willing to exploit me, makes it even harder for me to be able to trust anyone. I feel that I have less value than others, and at time[s] I feel that I have nothing to offer anyone.[34]

There is no doubt that Defendant's actions caused the victim harm, even if he did not pay for, sell, or directly procure her images.

Because Defendant's argument that § 2252A is unconstitutionally applied to him is meritless, his counsel was not constitutionally deficient by failing to raise this argument, nor was Defendant prejudiced as a result. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

### 3.     *Restitution and Assessment Imposed*

In a similar vein to his § 2252A lack of harm argument, Defendant next argues that his counsel was ineffective for failing to argue that the Court's imposition of $5,000 restitution under 18 U.S.C. § 2259 exceeds the harm he inflicted onto the victim. He also argues his counsel was ineffective for failing to argue that the $10,000 AVAA assessment is beyond his reasonable ability to pay. The Court addresses Defendant's arguments regarding each monetary sanction in turn.

---

[33] *Paroline*, 572 U.S. at 454 (discussing how distributors cause more loss to a victim than mere possessors because they "may have caused hundreds or thousands of further viewings").

[34] Doc. 17, Attach. 1 at 1–2.

          a.          $5,000 Restitution Award

Defendant relies on *Paroline v. United States*[35] to make his excessive restitution argument. In *Paroline*, the defendant pled guilty to one count of possession of child pornography under § 2252.[36] In doing so, the defendant admitted to possessing two images of a particular victim, who sought $3.4 million in restitution against the defendant under § 2259.[37] This amount constituted the entirety of her losses from the trade in her images since they were first produced decades prior.[38] The defendant argued such an award was excessive because, as a mere possessor, he should not be liable for the victim's entire loss for the trade in her images.[39] The *Paroline* Court agreed with the defendant, holding that "[r]estitution is therefore proper under § 2259 only to the extent a defendant's offense proximately caused a victim's losses."[40]

Defendant asserts that *Paroline* stands for the proposition that any harm claimed by the victim in a possession case is a "legal fiction," but *Paroline* did not eliminate the availability of restitution in possession cases.[41] Nor did the *Paroline* Court find that the defendant in the case only caused $47 in harm as Defendant alternatively claims.[42] Instead, the *Paroline* Court noted

---

[35] 572 U.S. 434 (2014).

[36] *Id.* at 441.

[37] *Id.*

[38] *Id.* at 440, 442–43.

[39] *Id.* at 442–43.

[40] *Id.* at 448.

[41] *See id.* at 458–59.

[42] Defendant seemingly relies on Justice Sotomayor's dissent in *Paroline* which notes that the victim's counsel recognized that "a truly proportional approach to restitution would lead to an award of just $47 against any individual defendant" given the high number of offenders in the trade of her images. *Id.* at 488 (Sotomayor, J., dissenting). The dissent, however, further notes that "the Court expressly rejects the possibility of district courts entering restitution for 'token or nominal amounts'" and that "the Court wisely refuses to permit" such a result. *Id.* at 487–88 (quoting *id.* at 459).

seven non-exclusive factors that a district court can consider to determine a reasonable restitution amount in child pornography cases, including:

> [1] the number of past criminal defendants found to have contributed to the victim's general losses; [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images; [6] how many images of the victim the defendant possessed; and [7] other facts relevant to the defendant's relative causal role.[43]

The *Paroline* Court further recognized that distributors of child pornography contribute more to a victim's losses than an ordinary possessor.[44]

Here, the Court did not impose a restitution amount in violation of *Paroline*. The Court imposed $5,000 restitution, which is far less than what would be the entirety of the victim's losses, and far less than the $3.4 million at issue in *Paroline*.[45] $3,000 of the imposed restitution is non-discretionary under the mandatory restitution provision for § 2252A offenses.[46] The additional $2,000 is reasonable considering Defendant's plea of distributing six child pornography images and the harm he inflicted onto the victim in doing so, as previously discussed.

Defendant's argument that the Court imposed excessive restitution is meritless such that his counsel was not constitutionally deficient in failing to raise this argument nor was Defendant prejudiced as a result. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

---

[43] *Id.* at 460.

[44] *Id.* at 454.

[45] *Id.* at 441.

[46] 18 U.S.C. § 2259(b)(2)(B).

        b.        $10,000 AVAA Assessment

Defendant asserts his counsel failed to argue that he was unable to pay the $10,000 AVAA assessment because of his financial position. Defendant's counsel, however, did raise Defendant's inability to pay to the Court. Defendant's counsel generally argued that Defendant "does not have the financial where-with-all to pay" an AVAA assessment in the Sentencing Memorandum filed with the Court, which the Court read prior to the sentencing hearing.[47] Defendant's counsel also stated that Defendant "is indigent" at the sentencing hearing.[48]

The Court recognized Defendant's indigency when waiving the JVTA assessment at sentencing.[49] While the Court still imposed a $10,000 AVAA assessment, it did so "because, as noted, there are other victims of [Defendant] besides the one involved in this case."[50] This result is proper under the guidelines, which required the Court to consider Defendant's prior federal conviction for possession of child pornography and his admission to other offenses involving 15 victims for which he has not been prosecuted.[51]

Defendant's counsel did not perform deficiently regarding the AVAA assessment because his counsel argued Defendant's indigency to the Court at the sentencing hearing. To the extent that Defendant argues his counsel failed to do so, Defendant does not demonstrate prejudice because the Court recognized his indigency at sentencing; any additional argument on his indigency would

---

[47] Doc. 18 at 4–5; Doc. 24 at 7.

[48] Doc. 24 at 7.

[49] *Id.* at 13.

[50] *Id.*

[51] *See* 18 U.S.C. §§ 2259A(c), 3553(a).

not have changed the Court's ruling. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

      4.     *Legality of Supervised Release*

Defendant next asserts that his counsel was ineffective for failing to argue that supervised release is an illegal sanction. Specifically, Defendant argues that supervised release has become an unconstitutional second penalty that leads to reincarceration of individuals for what would otherwise be innocent activities, actively inhibiting true rehabilitation.

Because Defendant pled guilty to a § 2252A offense, § 3583(k) of the Sentencing Guidelines required the Court to impose a term of supervised release of "any term of years not less than 5, or life."[52] Defendant argues the Court is not bound by this requirement because it is unconstitutional, but the particular provision of § 3583(k) that the Court imposed supervised release under has repeatedly been upheld as constitutional.[53] As such, the Court's imposition of a 20-year term of supervised release is well within § 3583(k)'s constitutional requirement.

The 20-year term also reflects all purposes of imposing supervised release. Defendant is correct that rehabilitation is one purpose of supervised release, but supervised release also exists to reflect "the nature and circumstances of the offense and the history and characteristics of the defendant," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."[54] And a future post-revocation sanction Defendant might face from a possible violation of his supervised release would not be a second penalty, rather, post-

---

[52] 18 U.S.C. § 3583(k).

[53] *See United States v. Periard*, 846 F. App'x 633, 636 (10th Cir. 2021) (collecting cases).

[54] 18 U.S.C. §§ 3553(a)(1), (2)(B)–(C), 3583(c).

revocation sanctions are part of the penalty of the initial offense.[55] Defendant's arguments to the contrary are meritless.

Finally, in a supplement brief to his Motion, Defendant argues the Supreme Court's June 2025 decision in *Esteras v. United States*[56] supports his challenge to supervised release. Defendant's reliance on *Esteras*, however, is misplaced. *Esteras* held that a district court cannot consider the retribution factor in § 3553(a)(2)(A)—"to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"—when imposing a post-revocation sentence.[57] Here, Defendant's case was before the Court on original sentencing, not on revocation, rendering *Esteras* inapplicable. Even assuming *arguendo* that the *Esteras* rationale extends to an original sentence imposing supervised release, *Esteras* was issued after the Court sentenced Defendant and does not apply retroactively.[58] Further, the Court did not reference § 3553(a)(2)(A)'s retribution factor when imposing the 20-year term of supervised release.[59] In any event, Defendant's counsel cannot be considered ineffective for failing to raise an argument under *Esteras* a year before the decision was issued.[60]

---

[55] *See, e.g.*, *United States v. Cordova*, 461 F.3d 1184, 1186 (10th Cir. 2006) ("It is well-settled that supervised release is 'part of the penalty for the initial offense.'") (quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000)); *United States v. Haymond*, 588 U.S. 634, 648 (2019) ("This Court has already recognized that supervised release punishments arise from and are 'treated as part of the penalty for the initial offense." (alterations omitted) (quoting *Johnson*, 529 U.S. at 700)).

[56] 145 S. Ct. 2031 (2025).

[57] *Id.* at 2036–37.

[58] *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." (quotations omitted)).

[59] *See* Doc. 24 at 12–13. In imposing the 20-year term, the Court permissibly relied on Defendant's history of reoffending in significant ways. *See* 18 U.S.C. §§ 3553(a)(1), 3583(c).

[60] *See Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) ("[W]e have rejected ineffective assistance claims where a defendant 'faults his former counsel not for failing to find existing law, but for failing to predict future law' and have warned 'that clairvoyance is not a required attribute of effective representation.'" (quoting *Strickland*, 466 U.S. at 689) (further citations omitted)).

Because Defendant's arguments that supervised release is an illegal sanction are meritless or were otherwise non-existent at the time of his sentencing, his counsel was not constitutionally deficient in failing to raise this argument nor was Defendant prejudiced as a result. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

5.   *Legality of SORNA Registration*

Finally, Defendant asserts that his counsel was ineffective for failing to argue that requiring him to register as sex offender under SORNA is an illegal sanction. Defendant argues SORNA is unconstitutional because it is based on a "myth" that sex offenders recidivate at higher rates than other offenders.

The Supreme Court has recognized "that the Necessary and Proper Clause grants Congress adequate power to enact SORNA."[61] The Supreme Court did so despite conflicting data on sex offender recidivism rates, stating:

> Congress could reasonably conclude that registration requirements applied to federal sex offenders after their release can help protect the public from those federal sex offenders and alleviate public safety concerns. There is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals. There is also conflicting evidence on the point. But the Clause gives Congress the power to weigh the evidence and to reach a rational conclusion, for example, that safety needs justify postrelease registration rules.[62]

As such, SORNA's constitutionality stands firm as applied to Defendant.

Defendant also argues that his crime is not a "sex offense" within the term's meaning under SORNA. SORNA defines "sex offense" to include "a criminal offense that is a specified offense against a minor."[63] SORNA goes on to define a "specified offense against a minor" to include

---

[61] *United States v. Kebodeaux*, 570 U.S. 387, 389 (2013).

[62] *Id.* at 395–96 (citations omitted).

[63] 34 U.S.C. § 20911(5)(A)(ii).

"[p]ossession, production, or distribution of child pornography."[64] Defendant pled to distribution of child pornography, which squarely falls within SORNA's definition of a sex offense. Thus, Defendant's argument to the contrary is meritless.

Because Defendant's arguments that SORNA is an illegal sanction against him are meritless, his counsel was not constitutionally deficient in failing to raise this argument nor was Defendant prejudiced as a result. Accordingly, Defendant cannot establish ineffective assistance of counsel on this ground.

Overall, an evidentiary hearing on Defendant's Motion is unnecessary because the Motion and records of this case conclusively show that he is not entitled to relief.[65] None of Defendant's arguments have merit and he cannot establish that his counsel was constitutionally deficient for failing to raise them, nor can he demonstrate he was prejudiced as a result. Therefore, Defendant fails to demonstrate ineffective assistance of counsel under *Strickland* and his Motion to Vacate on such grounds is denied.

### IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to a defendant-applicant. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[66] This burden is met if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[67] For the reasons explained above,

---

[64] § 20911(7)(G).

[65] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (citing 28 U.S.C. § 2255).

[66] 28 U.S.C. § 2253(c)(2).

[67] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (citation omitted).

Defendant has not made a substantial showing of the denial of a constitutional right. Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that after reconsideration, Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 22) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 12th day of November, 2025.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE